### FREY *v.* WITMAN.

A., the owner of a tract through which a creek ran, and on which a mill was erected, purchased of the *supra-riparian* owner the right of diverting the water of the creek by means of a dam of the height of any former dam. A. then sold part of his land on the creek below the point of diversion. As against his grantee, A. has the right to divert the whole of the stream for the use of his mill, and for that purpose to erect a dam higher than that stipulated for in the grant by the *supra-riparian* owner.

IN error from the Common Pleas of Lehigh.

*March* 23. Case for diverting a water-course. The case was

this : Frey was the owner of a large tract, through which a small creek ran, and on which a fulling-mill was erected as early as 1815. To supply this mill, a race had been dug through his land, to which the water of the creek was partially diverted by a small dam erected by the license of an adjoining proprietor. In 1837, Cooper, who owned the land adjoining Frey's tract, through which the creek ran to Frey's tract, by deed reciting that Frey was seised of a plantation and water-works contiguous, and that there had been a mill-dam erected on Cooper's land for the benefit of Frey, conveyed him the right to raise and build said dam " *as high as it ever was or has been built heretofore at any time,*" and by means thereof to lead the water of the creek into the land of Frey for the use of his mill, or for the purpose of watering his meadows. In 1843, Frey conveyed to Witman two pieces of land, the one lying on both sides of the creek some distance below the dam, and extending back to within a few feet of the race ; the other extending back from within a short distance of the other side of the race, with the right of watering his cattle in the race running between the said two tracts, together with the use of the land along the said race, and whatever might grow thereon.

In 1845, Frey erected a new dam on Cooper's land in place of the old one, which had been composed of loose stones, and had permitted the water to leak through it. The new dam was two inches higher than the old one, and perfectly tight. The millwright stated his boy had put in the stone at the overfall two inches too high, and in a week or ten days, so soon as this was discovered, it was lowered to the former height. It was for the diversion, during this period, this action was brought. It was in evidence that, until the new dam was built, the creek was never entirely dry ; but afterwards, in dry seasons, the whole of the water was diverted into the race, and then all the water was wanted for the use of the mill.

His honour, Banks, P. J., instructed the jury that defendant had the right to mend his dam, or erect a new one at the same height he had it before his sale to Witman, and to keep it tight ; but he had no right to raise it higher. If the diversion of the water was owing to the increase in the height of the dam, the plaintiff could recover. If not exclusively from that, he could not. The defendant sued out this writ of error.

*Porter*, for plaintiff in error.—The question is, can the owner of the mill, in case of necessity, take all the water of the creek, or

is he confined to so much as he could obtain by the old dam. It had been used for thirty years, and, when the plaintiff purchased, he saw it was used to turn the mill, and was at times essential to it. He, therefore, had notice that the defendant did not intend to convey any right to the water of the creek. This is shown in the grant of the right to water cattle in the race, which is an exclusion of any other right.

*King*, contrâ.—We contended in the court below that Frey, in selling the land through which the creek runs, was bound by the situation in which he then had placed 'it, and could not stop more of the water than had been customary prior to the sale. But the court went as far in his favour as they could according to the law. By the sale of the land, the riparian ownership passed with it, subject to the rights of other owners.

These had been affected to a certain extent only. The grant of the right of diverting the water was only valid against those whose lands lay between the point of diversion and the point of return, by reason of the ownership of that land by the grantee of the water-right. Subject to that grant, he conveyed all the riparian rights to Witman. Against him his right was limited by the extent of the prior grant. This was limited to a dam of a certain height. For the excess he was clearly liable, as the court held. The defence on the ground of the reservation in his grant cannot avail. The object of that was to procure the means of watering cattle on his farm; and clearly the express provision for one right by no means implies the waiver of any other incident of ownership. In point of fact, the use of this creek for household purposes was a main inducement to his purchase, and an expensive house has been erected near the creek because of the excellence and convenience of the water.

PER CURIAM.—When the plaintiff below purchased the lots between the dam and the mill, including the old channel of the creek, it was apparent to his eye that the vendor had appropriated the whole stream to his mill, and that he did not intend to part with a drop of it. Why should he do so to the ruin of his property? All the water that was suffered to escape into the old channel, leaked through the dam, which was old and defective; but the vendor had no right to suppose that this was a natural, and therefore to be a permanent, state of things. He might as well suppose that a wash-gate, accidentally drawn at the time, was never to be shut

down. That he did not expect to derive his supply from the creek, is evident from his covenant-right to water his cattle at the race; an easement that would have been unnecessary had the vendor precluded himself from turning the whole stream into it. He, however, built a new dam, and the complaint is that it is better than the old one, which let part of the water escape and decreased his power. But he never intended to relinquish what would render his mill useless in particular seasons. The principle adopted by the judge, therefore, was not the proper one, for the defendant was entitled to the exclusive use of the stream.

Judgment reversed.